argued cases today. The first of these is number 2012-1461, PRECISION LINKS v. USA PRODUCTS. Mr. Harrington. May it please the Court, good morning. My name is James Harrington. I'm appearing on behalf of the plaintiff, PRECISION LINKS, Incorporated. The key point of this case on merits turned on construction of a particular claim term, as patent cases often do. That term was dimensioned for the passage there through with respect to certain cargo straps. It was a hotly contested issue. I think defendants ultimately prevail on that. What did you argue was the correct claim construction? Well, I think to answer that question, you have to understand within reference to how the court actually came out and how we differ. The court, district court, decided that that term meant that the dimensioning had to occur only through elongation of the strap. In other words, no other stretching of the opening. Our position was that elongation, yes, is required, but that other slight deformation could occur in the accused device and still meet the claim language that we were advancing. Well, one of the things that I wasn't entirely clear about in reading the opinions and the pleadings that had been filed was whether you were talking about the end of the strap or the body portion of the strap. Were you suggesting that the end portion of the strap could be ignored in the claim limitation and that it only applied to the body of the strap? Well, that is my contention, but it is a contention that is rooted in the actual claim language. The claim language very clearly differentiates between the end portion. I just want to be clear. You'll get a chance to argue why it's correct, but what you were saying is the end portion doesn't matter. It's only the body that matters, and the body could be fitted through the holes here with only minor deformation. Am I understanding that correctly? That is correct, and I think the basis for that is found in the language of the claim itself. It refers to the main body portion as distinct from the end portion. Well, Mr. Harrington, how can you make the device work as the patent claims indicate it is supposed to work when you have one of these straps being, in effect, woven into and through another one? The end portion has to go through, doesn't it? Yes, the end portion has to go through. The question is whether the deformation that the end portion causes is sufficient to take it outside of the claim language, and we think that it is not. Is there a different deformation standard for the end and for the body? I'm sorry, I missed the first part of your question. Is there a different deformation standard for the end portion and the body of it? Are you referring to, does it require a different amount of deformation? I'm puzzled here because you told me that your argument to the district court was that the end portion didn't matter and that it was only the body that was subject to the limitation. Judge Bryson pointed out that that didn't seem to make a lot of sense in terms of the claim. So I'm asking you, what's the standard? Is there a different standard here, in your view, for deformation of the end portion and deformation for the body portion? I mean, what is your claim construction? There is a different standard for deformation that is caused by the end portion versus deformation caused by the main body portion. What's the different standard? The different standard is that one is in the claim and one is not. Well, so there's no limitation. The end portion could require a huge deformation and it wouldn't make any difference. Yes. But the end portion could be so large that it couldn't go through at all. Yes, of course. That would still infringe? Well, no, that would not infringe because it would be impossible to get the main body portion through. If you can't get the end portion through, then you can't get the main body portion through at all. So there is a limitation there. It is a limitation of functionality because the end portion must go through. The question is how much deformation is allowed to keep it within the claim, deformation by the end portion versus deformation by the main body portion, presuming that you can get the end portion through regardless of the amount of deformation that is required. Let me see if I can shed a little bit more light on this. Just looking at the patent, column 2, line 15 or 16, it says the main body of the strap of the present intervention does not include either end portion of the strap between which it extends. So the way I read your claims is that you're not claiming anything with respect to the ends, only to the strap itself. Only to the main body portion. The main body portion of the strap. Yes, and that is, I think, a critical and fundamental difference. Now, we're not here to argue that the district court erred on the question of its claim construction. That, of course, has left the bar. So it could be that the, just to follow up on Judge Bryson's question, it could be that the end portion has a huge end and won't go through, or it could be a very small end and pass through easily, but it's irrelevant because the claims are directed only to the main portion, the strap portion of the invention and not the ends. I think you've hit on precisely what I'm trying to say here. It simply does not matter. Now... It doesn't, but I thought you had said earlier that it does matter that the end portion be able to pass through. Yes, the deformation that is caused by the end portion does not matter for the purposes of the claim. As long as the end portion can pass through. As long as the end portion can pass through. Okay, so what's the basis for that claim construction? The basis for that construction is found in the specification itself, which shows... Where are you? This is appendix page 80, column 2, lines 53 and 54. Elongation is not the only mechanism that dimensions the strap. There's a reference there to stretchable. The strap being stretchable. But where does it say the end portion don't matter? I'm sorry? Where does it say the end portion doesn't matter? Well, with all due respect, Your Honor, I don't think it requires that the specifications say that the end portion doesn't matter, because the end portion is not a part of the claims. What matters is what is in the claims. I think when you're construing a claim in light of the specification, a specification that says that the opening may be elongated or it may be stretched, I think that supports a contention that says that when the main body portion of the second strap goes through that hole, that it may be dimensioned through either elongation or through stretching. And stretching to me connotes deformation of some type. Turning to Claims 6 and 8, what was the pre-filing investigation that gave you a sufficient basis for charging infringement of those two claims? Well, I think if you'll recall in the analysis that was provided to the Court in the declaration and the copy of the opinion letter, there is some language in that opinion letter that indicates that asserting Claims 6 and 8 might be appropriate because two straps together would satisfy all the limitations of those claims. I think the District Court seized on that. If they were used in the manner indicated. Yes. So what you didn't have any evidence, as I understand the record, that that had ever happened, right? Or that anyone had suggested that the straps, the accused straps, be used in that manner. Is that right? Well, I think that the construction of the straps themselves suggests that they be used in that manner. Now, we have an underdeveloped record on the question of what actually had occurred with regard to the defendant's conduct. Well, but that isn't responsive to the question of what you had done before filing to ascertain the likelihood of infringement of Claims 6 and 8. My understanding is you had no evidence with respect to 6 and 8 of contributory or induced infringement of the claims other than the speculation that perhaps something would turn up. Is that a fair statement of where you were on that? I don't think that's a fair statement of where we were at all. I think that... Okay. What did you have other than a hope that something would turn up? Well, we had two straps, and we had the ability to manipulate them into this configuration. The construction of those straps suggests, given the particular size of the openings and the manner in which the... And I understand this is not necessarily fully dispositive of the issue, but the manner in which Precision Link's own straps were designed to be used, and the visual similarities, the fact that they are sold in the same channels, suggests that those activities, that those straps are capable of infringing Claims 6 and 8, and that, in fact, they would be used in that manner because of the way in which they are sold. Did you have any evidence that Home Depot sold straps more than one at a time, like two straps or kits of three, things of that nature? I don't believe there's anything of record at this point. I do not recall that question, and it's not something that has ever come up. However, it is not unusual. It would not be unusual for that to have occurred. I simply can't answer that question. I don't think we have anything of record that says that. If I could add just one further question. What did you offer the District Court in defense of your state law claim when the District Court addressed the question of whether you had failed to plead actual injury with respect to the North Carolina state law claim? Well, actually, what had occurred in that situation was because there was some question as to the division of labor among attorneys that had appeared in the case, there was no response filed to the motion to dismiss that claim. And so it was granted by default. Is there anything on the record that would suggest a basis for having brought that claim given the requirements of North Carolina law? Well, Mr. Whitaker's testimony, or rather his declaration on that point, was that it was his view that damage being a likelihood and that, well, I think the assertion there, and perhaps we were a bit wrong on the law, but I think the assertion there was that precision links would be blamed for any failure of a defective strap that looked like a precision link strap and had been sold where precision link straps had been sold. But there was no showing or evidence of actual injury? That was what the District Court found, I believe. There was no showing of anything with regard to that claim because there was no response filed. But going into the case, you had no evidence of actual injury, which would have been a basis for asserting that claim initially, right? There was no evidence of an actual injury having occurred at that point, yes. I believe I'm into my rebuttal time. We'll give you two minutes for rebuttal. Okay, thank you. Mr. Gondar, is that how you pronounce it? May it please the Court. Good morning, Your Honors. So the suggestion is that the claim language distinguishes between the ends and the main body, and that as a result of that, their claim construction with respect to Claim 1 was reasonable. What's the response to that? The response is that there's nothing in the patent or in the file history that indicates that any deformation of the openings can occur as you pass one strap through the opening. How about let's go back to the patent, and let's address that particular point. Column 4, line 47, says thus, the strap span of the present invention is capable of elongation in the lengthwise and widthwise direction, and is stretchable in between a relaxed condition. Doesn't that indicate that the strap can elongate in either direction? I don't think so. It certainly doesn't indicate that an opening, an individual opening, can be elongated in the widthwise direction. Well, it says right there. I mean, that's what it says. It's talking about the strap, but when it refers to the figures, if you look at Figure 1 and Figure 2, it's showing only elongation in the lengthwise direction. Figure 1, I see elongation in both ways. I mean, I may be looking at this incorrectly, but going back, I mean, the claim language itself claims elongation that's capable both lengthwise and widthwise. So doesn't that give a reasonable interpretation to Precision's claim construction theory? The problem with Precision's claim construction theory is that they're not saying that the opening is elongatable in the widthwise direction. They're saying that you can deform it by jamming another strap through it. So you're not elongating before you pass the strap through. You're elongating as you pass the strap through. So it wasn't dimensioned properly to begin with if you have to jam another strap through to make it fit. The course construction is the one that said you have to elongate first before you have the path passed through. For Claim 1, yes. For Claim 1. Upon elongation, the opening is dimensioned for the passage there through. But even if it's been elonged lengthwise, why is it that you can't pass through another strap and have it go through? And the claim talks and has language in other parts of the patent that says that you want a little friction between the bridges of the strap openings. Right. I guess I don't understand your question. The point of novelty in the patent is that, and they actually distinguish the prior art, the Hartman patents, in which the Hartman patent taught that you limit the elongation so that the openings are just able to be used for, you know, attaching hooks. The whole point of novelty in this patent is if you elongate the openings, you can actually make them bigger to accommodate the main body portion of a second strap. So there's nothing in the patent indicating that you can dimension the openings by forcing another strap through. Well, but the problem is that the dimension limitation, they argue, is only applicable to the main body of the strap and not for the ends. And there does seem to be some support for that in the language of the claim, no? I would agree there is support for that. And we're, you know, the claim construction is final and non-appealable. So we're not, we're stuck with what the district court decided there. Yeah, sure. But the question is whether their claim construction was objectively unreasonable. It was unreasonable because no deformation of the opening is allowed in order to pass the second strap through. What is the textual, the best textual basis for that aspect of your claim? So the best textual basis are all the references in the patent to the fact that you can elongate the openings in order to accommodate the second strap. So your argument, I take it, really, is that to be dimensioned for passage means that the dimension, even after elongation, but the dimension, once it's set up for passage, must be larger than what's passing through. Otherwise, it isn't dimensioned for passage. Is that the essence of your point? That's exactly right. Our point is that the dimension element is a structural limitation of an apparatus claim. It's not a method for enlarging an opening that wasn't big enough to begin with. Let me ask you this question, shifting gears a little bit. Suppose that we should conclude that the allegations with respect to Claim 1 were, even if we conclude that they were ultimately erroneous, were nonetheless not objectively unreasonable, but that, for example, the allegations with respect to Claims 6 and 8 and the state law claims were unreasonable. What would be the correct disposition of this appeal? And you're setting aside the litigation misconduct findings? Let's assume we set aside the litigation misconduct findings, yes, other than the reference to the state law claim. I would say that the fee award would still be supported because the presence of Claims 6 and 8 is a big part of the reason why this case wasn't resolved much earlier. When PrecisionLynx filed a preliminary injunction, they filed it only on Claim 1 of the patent. There was a preliminary construction of that claim. The court denied the motion, and then we moved for summary judgment pretty soon after that, and we asked the court to make final the preliminary construction on Claim 1 and then to similarly construe Claims 6 and 8, and the court denied the motion as premature. So if Claims 6 and 8 hadn't been in the case, our position is that this case could have been resolved much sooner. Yeah, but doesn't that indicate that a substantial amount of the legal fees that you're claiming here were incurred in defending against Claim 1? So how could it be that we would sustain the entire award if we only find that 6 to 8 and the state law claims were objectively unreasonable? Well, the dimensions limitation was present in all of the independent claims. So all of the work done to convince the district court of the proper construction necessarily was done for Claims 6 and 8 as well. I'm sorry, go ahead. I just understood that hurts you rather than helps you, it seems. And I thought that the district court actually distinguished between 1 versus 6 and 8 in the claim construction by virtue of the absence of a reference to elongation in the 6 and 8, right? So the claim construction wasn't, in fact, exactly the same, although it was more favorable to you with respect to 6 and 8. Well, there was a commonality in the constructions and that was that the dimensions have to be, or the openings have to be properly dimensioned before you pass the second strap through. On Claim 1, the district court's construction was upon elongation, properly dimensioned. On Claims 6 and 8, it's in a relaxed state. The openings are properly dimensioned. That was my reading of the district court's opinion that state law claims did not support an exceptional case finding. Did I get that wrong? That's your reading of the district court's opinion? Right. I did not read that in the opinion, no. I don't think that issue has been raised before. How could the untimely filing of an appeal be litigation? Well, it was the fact that we had to deal with a motion in the district court to basically go back in time and somehow make the appeal filing timely. There was a motion for miscellaneous relief filed by Precision Links, and there was no authority for the district court to grant the relief requested. But nonetheless, we still had to oppose the motion and incur additional burden and expense in doing so. Of course, we didn't seek any fees for getting that previous appeal dismissed in this court. Those were never part of any of the fees requested. That could be bad trial strategy, but how is that litigation misconduct? Standing alone, I would agree with you, it's probably not litigation misconduct. But what the district court found, having lived with this case for over two years, was that Precision Links made repeated assertions of frivolous positions, missed several deadlines, and requested relief that it couldn't get. So this was a pattern of misconduct, and I think taken all together is where you get the misconduct finding. The pattern of bad arguments is litigation misconduct. That's part of the litigation misconduct, and maybe that standing alone wouldn't get us there, but it wasn't just frivolous positions. It was also missing deadlines, ignoring court rules, and the like. Well, the district court didn't seem to rely very much, if at all, on the missing deadlines aspect. And following up on Judge Dice's question, our definition of litigation misconduct has generally been something, and I'm just quoting from, I guess, the old reliable case that I'm familiar with. Litigation misconduct generally involves unethical or unprofessional conduct by a party or its attorneys. Now, the fact that someone misses a deadline or, in the case of the notice of appeal, fails to file a notice completely and then attempts to rescue the problem, the situation, strikes me as falling short of misconduct that would be unethical or unprofessional conduct. I agree it probably wouldn't be unethical, but our position is that it is unprofessional. Unprofessional in that. Right. All right. And your argument on that, I think it would be that there simply was no support for the various means that your opposing counsel sought to employ to reinstate the appeal. That's exactly right. And yet we still had to obviously respond to it. Okay. Anything further? I do have a couple more points that I wanted to make. So I just wanted to emphasize that here it wasn't just a matter of there being no support for the plaintiff's claim construction. The district court, in detail, reviewed the specification, the claim language, and the file history and found that there was the presence of contradictory support that was never refuted by precision links. The claim construction issue was not a close call at all. On the subjective bad faith finding, the district court found that precision links claim construction was so unreasonable that it evidenced bad faith. That alone would be enough. As further evidence of bad faith, it found the pre-filing investigation was inadequate. It didn't need that to find bad faith. And frankly, in this case, no pre-filing investigation would have been adequate. An adequate pre-filing investigation would have led a reasonable litigant never to file the case. I have nothing further and I'm happy to answer any other questions. Well, I do have one. Let's assume for a moment that the argument that Mr. Harrington is making with respect to sliding the main body through the hole and with some deformation of the hole, assume that that is a permissible interpretation. Maybe not the best interpretation, but at least a permissible interpretation of the claim language that stops short of being unreasonable. Then at least with respect to claim one, I take it there would be no failure of pre-filing investigation, right? Because that would be your device. Do you disagree with that? It depends on how you define flight. I mean, in a relaxed condition, the width of our openings is already 40% smaller than the depth of the main body portion. And when you elongate the strap as called for by claim one, the width actually contracts. The width of the opening contracts. So it becomes even that much smaller when compared to the depth of the main body portion. This is one of the points that bothers me about the case, that the court concluded that you have to elongate it in order for there to be the dimension for the pass-through. But let's say even if you do that, and the prior dialogue with your opponent, and I believe part of it with yourself, is that even in that state, you may have to jam through the end and the other strap, but you can pass it through. Isn't that enough in order to find that the petitioner's claim construction for claim one is not objectively baseless? I don't think it is enough, because claim one reads on one strap. It does require openings that are dimensioned for a second strap to pass through. And the language is dimensioned for the passage there through of a second strap, right? Under that analysis, you might as well just get rid of the word dimensioned completely and have the claim say for the passage there through. Then it's talking about a capability that you can pass a main body portion of a second strap through, but when it says dimensioned for, it's a structural limitation on the size of the opening. And it must be the right size before you pass the second strap through. The right size meaning to allow passage? Meaning that there's no deformation. It slides right on through. And the claim says that? It slides right on through? It doesn't say anything about deformation, though, either. Well, I look at the claim, I'm looking at claim two at line 56, 54. It says a passage through an opening. The opening contracts, elongation contracts about the strap and preferably provides resistance against the sliding movement. I mean, it even contemplates that there's resistance when you insert the second strap. I think what that's contemplating, if you read the patent, is that you elongate it to fit the main body portion of a second strap through. And then when you release the elongation, when you relax it somewhat, it will contract about the main body portion. It's not talking about that it's already contracting as you pass it through and thereby being deformed. It's talking about the ease of passage while it's elongated. Right. And then when you relax the strap, it contracts about it to hold it in place. Okay. Thank you. Thank you very much. Mr. Harrington, you've got two minutes left. Just a couple of brief points. I do think that the fact that claim one continued in this case after the district judge was invited to dismiss the claims based on claim one indicates, and on top of that, the necessity of construing claim one in order to understand claim six and claim eight, because of the commonality of language in those, I think indicates, and if the court determines that claim one was not objectively, unreasonably asserted, I think that, by extension, any remand of this issue for further consideration would have to contain an instruction that says that the time spent for all of those claims must have been objectively, those claims were objectively, reasonably asserted. So any apportion of the attorney fees would not include all of that time. But what about the litigation misconduct, which we've held can be a separate basis for recovering attorney fees, though not for the whole case, but for that portion of the case involved in litigation misconduct? Well, I think I would challenge the assertion that there has been litigation misconduct here. I think there were some mistakes that were made. They were made by me in some cases. And I think from the perspective of who the party that has been sanctioned here, Precision Links, that party is not responsible for that misconduct, if it is indeed misconduct. They're not responsible for their lawyer's misconduct? Well, I think that if you are going to assess an attorney fee award against Precision Links, then that needs to bear some relation to Precision Links conduct. I don't think that's consistent with the way we've treated litigation misconduct sanctions in the past. I mean, we have occasionally made sanction orders jointly and severally extendable to both the attorney and to the party, but I can't bring to mind any case in which we've excused the party for conduct, which the attorney, by all indications, acting pursuant to authority from the client, has engaged in misconduct. To the extent, however, that that relates to the question of subjective bad faith, I do think that is of some import. We have a layperson who is in the court for some reason determined he was a person of greater skill in the art and had a better understanding of the patent law than an ordinary practitioner. I think to find that he is chargeable with bad faith because he obtained opinions of three counsel and common opinions as to the construction of these claims and he was chargeable with understanding that those three opinions in agreement were deficient in some manner. I think that has colored the district court's view. Were there any opinions about six to eight? I believe all three of the opinions dealt with claims six and eight as well. What did the opinions say about six to eight? Well, I think they're encapsulated in what's been made of records. Where do we find this opinion in the records? Well, it's on page A194 at the very bottom of that chart. There's one sentence about six and eight, which I think is it. Yes, in the discussion of the claim chart. It's also on page A192. It summarizes the conclusions and it goes on and says we have not fully analyzed claims six and eight because those claims require multiple straps. Right, it does say that. However, fully analyzed and did not analyze are two different issues. The first opinion doesn't say that we think claims six to eight are infringed. You're right, it doesn't say that. It says that we, as was quoted, that they might form the basis of a contributory or an inducement claim. In the footnote, I guess it is, to your chart on A194, you say that the straps six and eight, we think a good argument can be made for inducement or contributory infringement because the straps are specifically and explicitly designed to be used together. What is the evidentiary basis for your concluding that they were explicitly and specifically designed to be used together? I didn't realize that going this far over my time would happen. I believe it is on the basis of the purchase of several straps at one time and seeing how they work together. There may have been on the tag also showing two straps working together. But we don't have any evidence of that. And in your declaration, which you defended against the imposition of attorney's fees, you certainly didn't put anything about any tag. You're right, that's not in there. I'm simply trying to answer your question honestly as to how we got to that point. Okay, thank you. Thank you very much. The case is submitted. We thank both counsel. Thank you. Our next case is number 2012-1642, Ohio-Willow-Wood versus...